759 N.W.2d 269 (2008)
17 Neb. App. 230
Ryonee S. CURTIS, Appellee,
v.
Ryan M. CURTIS, Appellant.
No. A-08-126.
Court of Appeals of Nebraska.
November 18, 2008.
*271 Angelo M. Ligouri, of Ligouri Law Office, for appellant.
Michael R. Dunn, Richard L. Halbert, and Christopher C. Halbert, of Halbert, Dunn & Halbert, L.L.C., Falls City, for appellee.
IRWIN, SIEVERS, and CARLSON, Judges.
CARLSON, Judge.

INTRODUCTION
Ryan M. Curtis appeals from an order of the district court for Richardson County, which granted Ryonee S. Curtis' application to remove their child from Nebraska to Missouri. Because Ryonee has failed to show that she has a legitimate reason to move, we reverse the district court's order granting removal.

BACKGROUND
On December 20, 2006, the district court entered a decree dissolving the parties' marriage. The parties were granted joint legal custody of their minor child, Jordyn Ashley Curtis, born June 22, 2001, with Ryonee being granted primary physical custody of Jordyn, subject to Ryan's reasonable visitation rights. At the time of the divorce, Ryonee and Jordyn were living in the marital home in Falls City, Nebraska. The home was awarded to Ryan in the decree. Consequently, in January 2007, Ryonee and Jordyn moved in with Ryonee's boyfriend, Scott McCann (Scott). Scott owned the house, located in Falls City, and lived there with his three children.
On October 4, 2007, Ryonee filed an application to remove Jordyn from the State of Nebraska, alleging that her "present partner" has sold the home where he and Ryonee and Jordyn have been residing since the entry of the decree and has purchased property at Big Lake, Missouri, where he and Ryonee intend to build a home and reside permanently. Ryan filed a response and cross-complaint, in which he opposed Ryonee's application to remove and sought sole physical custody of Jordyn.
A hearing on Ryonee's application to remove and Ryan's cross-complaint was held on December 14, 2007, before a county court judge acting as a district court judge. Ryonee testified that Big Lake is 17.6 miles from Falls City. She testified that Scott owns property at Big Lake and that he plans to build a house on that property. She testified that she wants the court to allow her to relocate with Jordyn to Big Lake so they can continue to live with Scott and his children. She testified that Scott's current house has three bedrooms and one bathroom and that the house he plans to build will have three *272 bedrooms and two bathrooms. Ryonee admitted that she will have no legal interest in Scott's new house. She stated that Scott's present house was in the process of being sold and that the sale closing was to take place soon after the hearing. She testified that she and Scott have made arrangements to rent a home in Missouri for $400 per month until the new house is built. Ryonee testified that if she is allowed to move, she will continue in her same employment, Jordyn will continue to go to the same school, and Ryan's visitation schedule will not change. Ryonee also indicated that she would provide transportation for Ryan's visitation so Ryan would not have to drive to Missouri.
Ryonee testified that Ryan was awarded the marital home in the divorce and was ordered to hold her harmless against the mortgage on the home. She testified that the home has since been foreclosed and that as a result, she has been unable to obtain credit. Ryonee testified that given her current financial situation, she believed it would be difficult for her to obtain housing in Falls City similar to the house Scott is going to build. She estimated that she could only afford $200 for rent. Ryonee testified that she works full time at a grocery store, but there was no evidence of Ryonee's income. Ryonee testified that she receives $1,500 a year from Ryan, presumably as part of the division of the marital estate. She also testified that Ryan pays $460 per month in child support and pays 60 percent of daycare expenses for Jordyn.
Ryan testified that he rents a house in Falls City for $200 per month. Ryan testified that his family, as well as Ryonee's family, lives in Falls City and that Jordyn has always lived in Falls City. He testified that Jordyn has been involved in sports in Falls City and that she has developed a group of friends by playing sports, as well as having a group of friends in school. Ryan testified that he does not want Jordyn to move to Missouri because all her family and friends are in Falls City, as well as her school, and because Falls City is where she was born and has always lived.
Following the hearing, the trial court entered an order granting Ryonee's application to remove Jordyn from the State of Nebraska to Missouri and denied Ryan's cross-complaint for change of physical custody to him.

ASSIGNMENTS OF ERROR
Ryan assigns that the trial court erred in (1) determining that Ryonee's desire to continue to live with her boyfriend was a legitimate reason to remove Jordyn from Nebraska, (2) applying the best interests factors for removal to determine if there was a legitimate reason for removing Jordyn from Nebraska, (3) determining that the factors weighing against removing Jordyn from Nebraska were not applicable in the court's best interests analysis, (4) granting Ryonee's request to remove Jordyn from Nebraska without making a determination that it was in the best interests of the minor child to continue living with Ryonee, and (5) entering a decision and order contrary to the evidence and the law, constituting an abuse of discretion.

STANDARD OF REVIEW
[1, 2] Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. Wild v. Wild, 15 Neb. App. 717, 737 N.W.2d 882 (2007). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains *273 from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. Id.

ANALYSIS
[3] Ryan first assigns that the trial court erred in determining that Ryonee's desire to continue to live with her boyfriend was a legitimate reason to remove Jordyn from Nebraska. In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her. Wild v. Wild, supra. Under Nebraska law, the burden has been placed on the custodial parent to satisfy this test. Id.
[4] The threshold question in removal cases is whether the parent wishing to remove the child from the state has a legitimate reason for leaving. See Farnsworth v. Farnsworth, 257 Neb. 242, 597 N.W.2d 592 (1999). Ryonee's sole reason for moving is to allow her to continue living with her current boyfriend, Scott. The trial court found that this was a legitimate reason for removal, and in doing so, it focused on the fact that the move to Missouri is less than 20 miles from Falls City. The short distance does present a unique removal case in that most removal cases involve the custodial parent asking to move hundreds or thousands of miles away from his or her current location. However, no matter the distance involved, we still must apply the well-established case law and determine if Ryonee met her burden to demonstrate a legitimate reason for removing Jordyn from Nebraska.
[5, 6] Under the circumstances revealed by the evidence in this case, we conclude that Ryonee's desire to continue living with her current boyfriend is not a legitimate reason to remove Jordyn from Nebraska. Career advancement and remarriage are commonly found legitimate reasons for a move in removal cases, but they do not compose the exclusive list of legitimate reasons. See Jack v. Clinton, 259 Neb. 198, 609 N.W.2d 328 (2000). Clearly, Ryonee's desire to move from Nebraska is not based on an employment opportunity for her or Scott and is not based on remarriage. Ryonee's sole reason for wanting to move is her desire to continue living with Scott as she has been doing since moving out of the marital home. Because Scott is selling his house in Falls City where Ryonee and Jordyn have been living, Ryonee and Jordan have to find someplace else to live. However, Ryonee has not demonstrated a legitimate reason as to why their new home has to be with Scott in Missouri.
Ryonee testified that given her financial situation, it would be difficult for her to obtain housing in Falls City similar to the house Scott is going to build in Missouri. While it could be true that Scott's new house might provide newer or more spacious housing for Ryonee and Jordyn than Ryonee would be able to afford on her own, there is no evidence that Ryonee cannot find or cannot afford suitable housing in Falls City. Ryonee testified that she could only afford $200 a month in rent. There is no evidence in the record regarding her income or her expenses. We do know, however, that she receives $1,500 a year from Ryan, as well as $460 per month in child support. We also know that Ryan is renting a house in Falls City for $200 per month. She does not allege that she is unable to find suitable housing for $200 per month in Falls City or that she even *274 looked into whether housing for $200 per month was available, and if so, whether such housing was suitable for her and Jordyn. Thus, she has not shown that she cannot afford housing on her own or that living with Scott in Missouri is her only available housing option.
[7] Because Ryonee has failed to satisfy the initial threshold of showing a legitimate reason to move, it is not necessary for this court to determine if it is in Jordyn's best interests to move to Missouri with Ryonee, nor is it necessary to address Ryan's remaining assignments of error. An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it. Templeton v. Templeton, 9 Neb. App. 937, 622 N.W.2d 424 (2001).

CONCLUSION
We find that the district court abused its discretion in granting Ryonee's request to remove Jordyn from Nebraska because Ryonee failed to meet her burden of proof to demonstrate that her reason for leaving Nebraska constituted a legitimate reason for removal. Accordingly, we reverse the district court's order granting Ryonee's application for removal. The district court's ruling with respect to Ryan's request for a change of custody is affirmed.
AFFIRMED IN PART, AND IN PART REVERSED.