773 N.W.2d 174 (2009)
18 Neb. App. 1
Sharon K. ROSLONIEC, appellee,
v.
Richard C. ROSLONIEC, appellant.
No. A-08-986.
Court of Appeals of Nebraska.
September 15, 2009.
*176 Christopher A. Pfanstiel, of Lewis & Pfanstiel, P.C., L.L.O., for appellant.
John W. Wilke, Omaha, for appellee.
*177 IRWIN, CARLSON, and MOORE, Judges.
CARLSON, Judge.

INTRODUCTION
Richard C. Rosloniec appeals from an order of the district court for Douglas County, which granted Sharon K. Rosloniec's motion for permission to remove the parties' child from Omaha, Nebraska, to Nevada and denied Richard's motion for a change of custody. Because Sharon has failed to show that she had a legitimate reason to move, we reverse the district court's ruling granting removal. We affirm the ruling concerning Richard's request for a change of custody.

BACKGROUND
The parties were married on September 28, 2002, and their marriage was dissolved by a decree entered on October 26, 2005. Sharon was awarded custody of the parties' minor child, Hannah, born in June 2004, subject to Richard's reasonable rights of visitation. On December 12, 2006, Richard filed an application to modify custody. On March 20, 2007, Sharon filed a motion for permission to remove Hannah from Nebraska. Sharon wanted to move with Hannah to Las Vegas, Nevada, which is where her fiance, Morgan Livingston (Morgan), lived. At a hearing held on October 30, the court allowed Sharon to make an oral motion for permission to temporarily remove Hannah from Nebraska.
On November 6, 2007, a hearing was held on Sharon's motion to temporarily remove Hannah from Nebraska. Both parties presented affidavits. Following the hearing, the trial court granted Sharon's motion.
On June 12, 2008, a hearing was held on Sharon's motion for permanent removal of Hannah from Nebraska and on Richard's motion to modify custody. At the time of the hearing, Sharon and Hannah had been living in Las Vegas for 7 months. Sharon was pregnant with Morgan's baby, and the baby was due to be born in September. Sharon testified that she and Morgan planned to get married before the baby was born. She testified that she and Morgan had been engaged since June 2006.
Sharon testified that she did not have a job in Las Vegas when the court granted her request for temporary removal of Hannah. Sharon began working in Las Vegas a month later. Sharon testified that she was teaching preschool in a childcare center. She testified that she was earning $11 an hour, which was more money than she made in Nebraska. Sharon did not indicate how much she had been earning at her job in Nebraska. However, her affidavit from the temporary removal hearing indicated that she had been making $7.95 an hour as a preschool teacher in Nebraska.
Sharon testified that she would like to complete her college education through a program offered by the State of Nevada for individuals employed at a daycare or school system who want to become teachers. She testified that through the program, Nevada would pay 80 percent of the cost of schooling, the employer would pay 10 percent, and the individual would pay 10 percent. She testified that she must be employed at her current job for a year before she would be eligible to enroll in the program.
Sharon testified that she and Hannah were living with Morgan in "one of the most upscale areas in Las Vegas." No further details were provided, and no evidence was adduced in regard to where Sharon and Hannah had lived in Nebraska. Sharon testified that the school Hannah would attend in Las Vegas when she starts *178 school "is about the best elementary school you can find that's not private" and that it is "higher than the average of the Omaha school systems." Sharon testified that she had no family in Las Vegas.
Sharon testified that when she filed the motion to remove Hannah from Nebraska, her reason for wanting to move to Las Vegas was that was where Morgan lived. She testified that Morgan lived in Las Vegas when they started dating in 2005, he later moved to California, and then he moved back to Las Vegas sometime in 2007.
The trial court entered an order on August 12, 2008, granting Sharon's motion to permanently remove Hannah from Nebraska. The trial court denied Richard's application to modify custody. The trial court gave no explanation for its decision in regard to either ruling.

ASSIGNMENTS OF ERROR
Richard assigns, restated, that the trial court erred in (1) granting Sharon's request for temporary removal of Hannah to Nevada pending trial on Sharon's request for permanent removal, (2) granting Sharon's motion to permanently remove Hannah from Nebraska, and (3) denying Richard's motion to modify custody.

STANDARD OF REVIEW
Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. Wild v. Wild, 15 Neb. App. 717, 737 N.W.2d 882 (2007). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. Id.

ANALYSIS

Temporary Removal of Hannah From Nebraska.
Richard first assigns that the trial court erred in granting Sharon's motion for temporary removal of Hannah from Nebraska. We agree that the court should not have granted Sharon's motion for temporary removal, but unfortunately, no relief can be provided for this error.
In Jack v. Clinton, 259 Neb. 198, 609 N.W.2d 328 (2000), the Nebraska Supreme Court specifically addressed the unnecessary and unfortunate complications that arise when a trial court grants a motion for temporary removal of a minor pending resolution of an application for permanent removal. The court noted that in addition to necessarily causing the record to include facts pertaining to the periods prior to and after relocation, an ultimate denial of the application for permanent removal will necessitate ordering the minor, who may have already recently adjusted to one move, to move again and return to the original jurisdiction. See id. The Supreme Court held, "The grant of temporary permission to remove children to another jurisdiction complicates matters and makes more problematic the subsequent ruling on permanent removal and encumbers appellate evaluation of the ultimate decision on permanent removal." Id. at 210, 609 N.W.2d at 337. As such, the Supreme Court specifically "discourage[d] trial courts from granting temporary permission to remove children to another jurisdiction prior to a ruling on permanent removal and instead encourage[d] them to promptly conduct a *179 full hearing on permanent removal." Id. at 210-11, 609 N.W.2d at 337.
Granting Sharon's request for temporary removal of Hannah from Nebraska was directly contrary to the Supreme Court's discouragement on this very issue in Jack v. Clinton, supra. Nonetheless, because the order was a temporary order, no relief can now be afforded to Richard for this improper ruling by the trial court.

Permanent Removal of Hannah From Nebraska.
Richard next assigns that the trial court erred in granting Sharon's request to permanently remove Hannah from Nebraska. In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her. Wild v. Wild, 15 Neb. App. 717, 737 N.W.2d 882 (2007). Under Nebraska law, the burden has been placed on the custodial parent to satisfy this test. Id.
The threshold question in removal cases is whether the parent wishing to remove the child from the state has a legitimate reason for leaving. See Farnsworth v. Farnsworth, 257 Neb. 242, 597 N.W.2d 592 (1999). Richard argues that Sharon failed to demonstrate that she had a legitimate reason for leaving Nebraska. The trial court made no finding concerning whether Sharon had demonstrated a legitimate reason for leaving Nebraska, and Sharon did not specifically assert in her motion to permanently remove Hannah from Nebraska that there existed a legitimate reason to leave Nebraska. Her motion asserted that the request for removal "is to increase the family's standard of living."
It is apparent from the record that Sharon's sole reason for wanting to move to and continue living in Las Vegas is that was where her fiance, Morgan, lived. She testified at trial that her reason for filing the motion to permanently remove Hannah from Nebraska to Nevada was because Morgan lived there.
The present case is similar to Curtis v. Curtis, 17 Neb.App. 230, 759 N.W.2d 269 (2008). In Curtis, a custodial mother had been living in Nebraska with her boyfriend in a house owned by the boyfriend. The boyfriend decided to sell his house and build a new one in a different state, causing the custodial mother to file an application to remove the parties' child from Nebraska so that she could continue living with her boyfriend. The trial court granted the custodial mother's request for removal, and we reversed the trial court's decision, holding that a custodial parent's desire to continue living with a boyfriend who was moving out of Nebraska was not a legitimate reason for leaving the state.
Similarly, based on the specific facts of this case, we conclude that Sharon's desire to move to Nevada because her fiance lived there is not a legitimate reason for leaving Nebraska. Although Sharon and Morgan were engaged, they had been engaged since June 2006, and at the hearing on permanent removal, they had no definite plans to get married. Sharon testified that they planned to get married before their baby was due to be born, but no date had been set and no arrangements had been made. The hearing was in June 2008, and the baby was due to be born in September. It is well established in Nebraska case law that remarriage is a commonly found legitimate reason for a move in removal cases, but Sharon's desire to move from Nebraska is not based on remarriage. *180 See Jack v. Clinton, 259 Neb. 198, 609 N.W.2d 328 (2000).
As previously stated, Sharon's motion for permanent removal of Hannah from Nebraska alleges that the request for removal is based on her desire to increase the family's standard of living. However, the record fails to demonstrate how the temporary removal had done so. There was no evidence of what Sharon and Hannah's "standard of living" was in Nebraska or how it was better in Nevada. Sharon did not have a job in Las Vegas when she filed the motion to remove Hannah from Nebraska, so a job opportunity was not a basis for her request to remove Hannah. At the time of the hearing on permanent removal, Sharon had a job in Las Vegas as a preschool teacher at a daycare. She testified that she was earning $11 an hour. We know from Sharon's affidavit presented at the temporary removal hearing that she earned $7.95 an hour at her job as a preschool teacher in Nebraska. Thus, Sharon was earning a higher hourly rate of pay in Las Vegas than she had earned in Nebraska. However, she was doing the same type of work that she had done in Nebraska and she failed to present evidence that there were no childcare jobs available in Nebraska that would pay $11 an hour. She also failed to present evidence of the cost of living difference between Omaha and Las Vegas. In addition, there is no evidence that her current Las Vegas job improved her career opportunities.
Sharon testified that her job at the daycare gives her the opportunity to finish her college degree in teaching through a program where the State of Nevada would pay 80 percent of her college expenses. Sharon and Hannah's standard of living could potentially increase if Sharon obtains a college degree. However, Sharon was not eligible to enroll in the program until she had been with her employer for 1 year, and she presented no evidence if she would then be automatically admitted into the program or if there were other qualifications that must be met. Further, she failed to show that there were not similar programs or financial aid available in Nebraska, such that she could not afford to complete her degree in Nebraska.
Legitimate employment opportunities for a custodial parent may constitute a legitimate reason for leaving the state. Wild v. Wild, 15 Neb.App. 717, 737 N.W.2d 882 (2007). Such legitimate employment opportunities may constitute a legitimate reason when there is a reasonable expectation of improvement in the career or occupation of the custodial parent. Id. Sharon has not shown that her job in Las Vegas was a legitimate employment opportunity or that the move to Las Vegas had increased her and Hannah's standard of living. We conclude that Sharon has not demonstrated a legitimate reason for removing Hannah from Nebraska.
Because Sharon has failed to satisfy the initial threshold of showing a legitimate reason to move, our analysis could end there. However, we further conclude that even if Sharon had proved a legitimate reason for removal, she has failed to carry her burden to demonstrate that allowing removal is in Hannah's best interests. After clearing the threshold of demonstrating a legitimate reason for leaving the state and removing a minor child to another state, a custodial parent must demonstrate that it is in the child's best interests to continue living with him or her. Wild v. Wild, supra. In determining whether removal to another jurisdiction is in the child's best interests, the trial court considers (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing *181 the quality of life for the child and the custodial parent; and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation. Id.
The trial court did not discuss any of the best interests factors in its order, nor did it make a specific finding in regard to Hannah's best interests. Based on our de novo review of the record, we find that Sharon failed to present evidence to show that Las Vegas provides benefits to Hannah under the factors considered in the best interests analysis.
In conclusion, we determine that Sharon has failed to adduce sufficient evidence to support her motion to permanently remove Hannah from Nebraska. Sharon failed to demonstrate a legitimate reason for removal, and even if she had met this initial threshold, she also failed to demonstrate that it was in Hannah's best interests to continue living with her. Accordingly, the trial court abused its discretion in granting Sharon's motion. We reverse the trial court's order granting Sharon's motion for permission to permanently remove Hannah from Nebraska.

Change in Custody.
Finally, Richard assigns that the trial court erred in denying his motion for a change in custody. Ordinarily, a request for change of custody will not be granted unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. Wild v. Wild, 15 Neb.App. 717, 737 N.W.2d 882 (2007). We conclude that Richard has not proved a material change in circumstances showing that Sharon is unfit or that the best interests of Hannah require such action. Therefore, Richard's assignment of error is without merit.

CONCLUSION
We find that the district court abused its discretion in granting Sharon's motion to permanently remove Hannah from Nebraska, because Sharon failed to meet her burden to demonstrate a legitimate reason for such removal. Accordingly, we reverse the district court's order granting Sharon's application for permanent removal of Hannah from Nebraska. The district court's ruling denying Richard's request for a change of custody is affirmed.
AFFIRMED IN PART, AND IN PART REVERSED.
IRWIN, Judge, concurring.
While I concur with the ultimate result reached by the majority, I write separately because I do not agree with the majority's suggestion that there was no legitimate reason for removal because Sharon was only engaged, and not yet married, to her fiance. I do not believe that there should be a bright-line test where marriage is the primary determining factor in establishing a legitimate reason for removal. The record presented in this case supports a conclusion that there was a legitimate reason for allowing permanent removalif not prior to the temporary removal order, then certainly after the temporary removal and prior to the trial in this case. Nebraska Supreme Court precedent requires that when determining whether permanent removal is appropriate, trial courts shall consider evidence of the parties' circumstances both prior to the time of the temporary removal and during the temporary removal period. Inasmuch as everyone agrees that Sharon failed to demonstrate that removal would be in Hannah's best interests, I believe the case is more properly resolved on that basis.

1. LEGITIMATE REASON FOR REMOVAL
The district court granted Sharon's motion for permission to remove the parties' *182 minor child, Hannah, from Nebraska to Las Vegas, Nevada. As a part of its decision, the court found that Sharon had a legitimate reason for the removal. In reversing the district court's order, the majority relies primarily on a conclusion that this finding of the district court was erroneous. I disagree with that basis for reversing the district court's order.
At the time Sharon filed her motion to remove Hannah from Nebraska, her stated reason for wanting to move to Las Vegas was that is where her fiance, Morgan, lived. After Sharon filed her motion, the district court granted her request to temporarily move to Las Vegas with Hannah pending the hearing on the permanent removal. Sharon and Hannah moved to Las Vegas in approximately November 2007. The hearing on her request for permanent removal was held in June 2008.
During the temporary removal period, Sharon obtained a job teaching preschool in a childcare center and became interested in an educational opportunity available to Nevada residents. Sharon would be able to complete her college education through a program offered by the State of Nevada for individuals employed at a daycare or school system who want to become teachers. Nevada would pay 80 percent of the cost of the schooling, her employer would pay 10 percent, and she would pay 10 percent. Sharon could enroll in the program after working at her current place of employment for 1 year.
Also during the temporary removal period, Sharon became pregnant with Morgan's child. Sharon was due to give birth in September 2008. She testified at the June 2008 hearing that she and Morgan planned to marry prior to the baby's birth.
Arguably, Sharon's initial reason for requesting the removalto be closer to her fiancemay not have constituted a legitimate reason for removal. However, because the district court granted Sharon's request for the temporary removal, the evidence at the June 2008 hearing was necessarily composed of facts pertaining to the period prior to the temporary relocation to Las Vegas as well as the results of Sharon and Hannah's experience during their time in Las Vegas. In Jack v. Clinton, 259 Neb. 198, 609 N.W.2d 328 (2000), the Nebraska Supreme Court indicated that when a temporary removal is granted, courts must consider both the evidence prior to the move and after the move. There, the court stated: "As a result of the grant of temporary removal, consideration of [the temporary removal period] with respect to the legitimacy of the permanent move and the best interests of the children was unavoidable." Id. at 210, 609 N.W.2d at 336.
That said, we must consider Sharon's time in Las Vegas as part of our discussion of whether she proved a legitimate reason for the relocation. At the time of the hearing, Sharon was gainfully employed as a preschool teacher at a daycare center. There is some evidence that Sharon's job in Las Vegas paid her more than her previous job in Nebraska. In addition, there was evidence that Sharon's new job could provide her with an opportunity to obtain her teaching degree. Such an educational opportunity would eventually improve Sharon's earning capacity.
A reasonable expectation of improvement in the career or occupation of the custodial parent is a legitimate reason to relocate. Gartner v. Hume, 12 Neb.App. 741, 686 N.W.2d 58 (2004). The Nebraska Supreme Court has also recognized the pursuit of educational opportunities as a legitimate reason to move to another state. Id. See, also, Kalkowski v. Kalkowski, 258 Neb. 1035, 607 N.W.2d 517 (2000).
*183 In addition to Sharon's employment and educational opportunities in Las Vegas, the evidence revealed that at the time of the hearing, Sharon was pregnant with Morgan's child. Sharon testified that she and Morgan were planning on marrying prior to the baby's birth in September 2008.
Career advancement and remarriage are commonly found legitimate reasons for a move in removal cases, but they do not compose the exclusive list of legitimate reasons. See Jack v. Clinton, supra. Neither should there be some kind of bright-line test where being engaged to be married is automatically insufficient but actually having gone through a marriage ceremony is sufficient. Sharon will soon share a child with Morgan, who resides in Las Vegas. Certainly, this changes the nature of their relationship, even if they are not yet married. It must also be considered in our analysis. Now, we must consider the interests of both Hannah and the new baby.
In light of all of the evidence about Sharon and Hannah's life in Las Vegas during the temporary removal period, Sharon has met her burden of showing a legitimate reason for the removal. Sharon's employment and educational opportunities, coupled with the impending birth of her and Morgan's child, constitute a legitimate reason for Sharon and Hannah to continue to reside in Las Vegas. As such, I disagree with that portion of the majority opinion which relies on a conclusion that there was no legitimate reason for removal as the basis for reversing the district court's order.

2. BEST INTERESTS
Although I disagree with that portion of the majority opinion which concludes that Sharon failed to demonstrate that she had a legitimate reason for the removal, I agree with the portion of the majority opinion which concludes that Sharon failed to demonstrate that it was in Hannah's best interests to continue to reside with her. As such, I agree with the majority's ultimate conclusion to reverse the district court's ruling granting Sharon's request to permanently reside in Las Vegas with Hannah.