IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE ON BEHALF OF JADE K. V. LUKE K.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE ON BEHALF OF JADE K., A MINOR CHILD, APPELLEE,
V.
LUKE K., APPELLANT, AND CHAZ G., APPELLEE.

Filed November 5, 2013.    No. A-12-1144.

Appeal from the District Court for Saline County: VICKY L. JOHNSON, Judge. Affirmed.

Marc J. Odgaard, of Hanson, Hroch & Kuntz, for appellant.

Mark J. Krieger and Terri M. Weeks, of Bowman & Krieger, for appellee Chaz G.

INBODY, Chief Judge, and IRWIN and RIEDMANN, Judges.

INBODY, Chief Judge.

INTRODUCTION

Luke K. appeals the order of the Saline County District Court regarding his complaint to establish custody and visitation of his biological child, Jade K., born as a result of an on-and-off relationship with Jade's mother, Chaz G. For the reasons that follow, we affirm the order of the district court in its entirety.

STATEMENT OF FACTS

Luke and Chaz are the biological parents of Jade, who was born in 2001. The two were in a relationship which continued on and off over the course of several years. Luke, Chaz, and Jade lived together until Jade was about 8 months old. Thereafter, Chaz and Jade lived with Chaz' mother. In 2007, Chaz met Terrance Hamm and the two began a relationship and lived together in DeWitt, Nebraska. In October 2009, Hamm and Chaz became engaged, but have not set a date to be married. In 2010, Hamm, Chaz, and Jade moved into the home of Hamm's father in Beatrice, Nebraska.

Also in 2010, Chaz voluntarily terminated her employment on a farm, where she was employed as a farrowing manager working full time and making $10.50 per hour, in order to attend a community college to pursue a nursing career. Chaz testified that at the time of trial, she was not enrolled in classes for that quarter because the classes she needed to take were not available, but that she had taken classes in the previous quarters, some of which classes were on campus and others that were online courses. Chaz plans on finishing her education at "UNMC" in Lincoln, Nebraska, and will commute from her home in Beatrice so that Jade can continue to live and attend school there.

For the first 6 years of Jade's life, when Luke and Chaz were not together, Luke had visitation with Jade on Mondays and Wednesdays, and every other Saturday and Sunday. However, Chaz did not allow overnight visits. When Jade turned 6 years old, Luke had visitation on Wednesdays and every other Friday, even when it was not his weekend, and weekend visitation was Saturday morning through Sunday afternoon.

In March 2011, Luke filed a complaint to establish custody, visitation, and a dependency exemption. The complaint indicates that in August 2002, the district court established that Jade's biological parents were Luke and Chaz, and that Luke was ordered to pay $299 per month in child support and provide health insurance for Jade. Luke alleged that Chaz had neglected the educational needs of Jade and requested custody of Jade or, in the alternative, that the parties be awarded joint custody. Chaz filed an answer and counterclaim, denying Luke's allegations, seeking custody of Jade, and also alleging that since the entry of the initial child support order, a material change in circumstance has occurred such that Luke's income had increased dramatically while her income had decreased.

At the time of trial, Jade was 11 years old. Jade attends the Tri County school and has attended there since she was in kindergarten. Chaz testified that Jade is in the fifth grade, but is learning at the fourth grade level in language, reading, and spelling classes at the recommendation of Jade's teachers, and is doing well. Chaz explained that in the past, Jade had difficulty paying attention and completing assignments. Chaz testified that at first she thought Jade was just "being a kid," but that now she understands Jade has attention deficit hyperactive disorder (ADHD). Jade was diagnosed with ADHD in 2011.

Dr. Adriane Schemm, a psychologist specializing in pediatric psychology, testified that she evaluated Jade and diagnosed Jade with ADHD in March 2011. Dr. Schemm testified that initially, she observed that Jade was delayed and had trouble focusing. Dr. Schemm recommended that Jade meet with her primary care physician for ADHD medication and suggested that Luke and Chaz contact Jade's school with the ADHD testing results. Dr. Schemm also encouraged Luke and Chaz to discuss the possibility of continued therapy in order to help with transitions, structure, positive reinforcement, and regulation.

Jade takes medication for her ADHD and speaks with the school counselor as the need arises. Chaz testified that Jade takes the medication only when she is at school, because the focus is for her school performance, and that Chaz wants Jade to take medication only when she has to, because of the side effects from the medication. This decision is supported by Jade's family physician, who prescribes the medication.

There was significant emphasis placed on Jade and her dental health history. Chaz testified that her family has a history of genetic dental problems and that she did not take Jade to

the dentist as soon, or as much, as she should have. Chaz testified that when Jade indicated her tooth hurt, Chaz took Jade to the dentist, and that Chaz had not done so previously because Jade brushed her teeth and did not appear to have cavities. Jade's pediatric dentist testified that Jade had significant work done in 2007, when she was 6 years old, which included fillings, a crown, and a pulpotomy. The dentist testified that Jade had tooth decay, but that the treatment, while dramatic for a young child, was not uncommon. In 2010, Jade returned and needed work on seven teeth. Chaz indicated that there was a substantial dental bill from the work done on Jade which she could not pay and that she had not received any money from Luke. Luke testified that he did not feel like he needed to pay any money for the $2,000 dental bill because he always made sure that when Jade was at his house, she brushed her teeth. Luke also testified that although he had not paid for the dental bill, he had paid for other things above the $299 per month in child support, such as other doctor bills, softball equipment, and clothing for Jade for his home.

In 2011 and 2012, in addition to the visitation mentioned above, Jade had 4 weeks of summer visitation scheduled with Luke. The summer of 2011 was split into 2-week blocks, with 1 week in between. In the summer of 2012, 4 weeks of visitation was scheduled with Chaz having visitation every other weekend. However, Chaz testified that she had limited Luke's visitation with Jade to 2 weeks during the summer of 2012, because she and Luke had agreed upon a parenting plan and he then refused to sign it. Looking back at the decision, Chaz testified that it was not a good one.

Chaz testified that she had been Jade's primary caregiver her whole life and was engaged and involved with Jade. Chaz testified that since Jade was a baby, Luke had not been to or scheduled doctor appointments or immunizations, and that Luke did not give her support until 2002, when Jade was 1 year old. Further, until 2011, she had not sought out an increase in the $299 per month child support ordered by the court. But, Chaz testified that Luke was capable of taking care of Jade and that the two have a loving relationship. Chaz also testified that since Luke was married, there has been a change in his demeanor and, for the first time, he had asked for additional parenting time. Chaz testified that Jade was referred to Dr. Schemm for evaluation by Luke's wife.

Chaz testified that her fiance, Hamm, was employed at the Lincoln Airport as a firefighter with a schedule of 24 hours on and 48 hours off. Hamm is also active with the U.S. Army Reserve at the Nebraska Air National Guard and will reenlist when his commitment is complete. Hamm was deployed in Afghanistan from 2008 to 2009, and is also now taking classes at a community college for paramedic and fire protection degrees. Chaz testified that Hamm is active in Jade's life, which includes disciplining her when necessary. Hamm testified that he and Jade have a good relationship. Hamm indicated that he and Chaz decided to move into his father's home in Beatrice to assist him with his health problems. Hamm and Chaz agreed to take care of the large home and property for his father in lieu of paying him rent.

Chaz' mother testified that Jade was smart, funny, creative, loving, and caring. Jade and Chaz lived with Chaz' mother in her home in DeWitt for the first 7 years of Jade's life. Chaz' mother witnessed Chaz caring for Jade by fixing meals, playing with her, taking care of laundry, and taking Jade to daycare because Chaz was working full time at that point. Chaz' mother

testified that Chaz was involved with Jade's schooling and discipline. Chaz' mother also testified that Luke was regular with his visitation with Jade.

Luke now lives in Crete, Nebraska, with his wife and 13-year-old stepdaughter. Luke works full time, earning $16.50 per hour, and is also a licensed emergency medical technician and volunteer with the Crete Fire Department. Luke testified that if he were to have custody of Jade, his wife would provide most of the caregiving during the day, while he was at work; that Jade would attend school in Crete; and that they would also coordinate for Jade to attend additional counseling or therapy to address the ADHD issues. Luke testified that Chaz had been Jade's primary caretaker for Jade's entire life, but that he was involved with Jade by attending school conferences and discussing issues with teachers. Luke testified that when he has visitation with Jade, he assists her with homework, helps her practice softball, and plays games with her, in addition to participating in various other activities with her. Luke testified that Chaz and Jade have a good relationship and that Jade is doing better in school, but that he has issues with Jade's hygiene and school performance. Luke also testified that with Chaz, Jade is not as safe as she could be. Luke testified that Jade and his stepdaughter get along and that his stepdaughter picks on Jade, but that it is "nothing excessive" beyond the usual sister relationship.

Luke testified that over the course of Jade's life, he has lived in eight different places with five different people and has held five different jobs--some of which employment was not voluntarily terminated. Chaz testified that Jade was in school before Luke had overnight visitations with her, because of his unstable living environments, and that prior to the summer of 2011, he had never requested any additional summer visitation.

The district court found that in August 2002, paternity was established and Luke was ordered to pay $299 per month in child support for Jade, in addition to health care expenses and 50 percent of childcare expenses. The district court found that custody was not awarded through those proceedings, but that Chaz has had custody of Jade since that time. The district court found that, as set forth above, Luke had exercised parenting time with Jade, which included that Jade had not had any overnight visitations with Luke until she was 6 years old, because he was living with other individuals where Jade did not have a room, and that those homes "tended to be party houses." Further, the court found that until recently, Luke had not exercised any holiday or summer parenting time.

The district court found that both Luke and Chaz were now in different relationships, with Chaz being engaged to Hamm and Luke now married with a 13-year-old stepdaughter. The court found that Chaz and Hamm were both students, with Chaz studying nursing and Hamm studying emergency firefighting. The court found that Luke had lived in numerous residences with lots of people and now he worked in Crete and lived there with his wife, who receives Social Security disability benefits.

The court found that Jade had always been enrolled at the Tri County school; that she had begun to experience difficulties 3 years prior, when the school district suggested additional programs for Jade; and that Jade underwent an evaluation which diagnosed her with ADHD. The court found that Jade was progressing in school and with her difficulties. The court also discussed that Jade had experienced significant issues with a lack of dental care, which was due to both parents, but did not approach abuse, neglect, or inappropriate contact.

The district court found that both parents were good and appropriate parents, that Hamm left the court with a positive impression, and that Luke's wife appeared to be the advocate for Jade's ADHD evaluation, although she did not testify at trial. The court found there was no doubt that Luke loves Jade and that she feels the same; however, Luke had been passive regarding his responsibility to someone other than himself and he delegated those first 11 years of Jade's life to Chaz, and even now to his wife, who provides most of the day-to-day care of Jade. The court found that if Luke were awarded custody, he would move Jade to Crete, and that Luke did not understand the difficulty that changing Jade's routine would cause.

The court concluded that, based upon all of the factors and the parties' previous agreement that they share joint legal custody, the parties be awarded joint legal custody and that physical custody of Jade be placed with Chaz, supported mostly by the undisputed facts that Chaz had been Jade's primary caretaker for 11 years and that introducing disruption would not be in her best interests. The court ordered Luke to pay $523 per month in child support and awarded Luke the dependency exemption for 2012, 2013, and 2014, and every even-numbered year thereafter. The court also entered into a parenting plan and financial plan. It is from this order that Luke has timely appealed.

### ASSIGNMENTS OF ERROR

On appeal, Luke assigns that the district court erred by placing physical custody of Jade with Chaz, by limiting his summer visitation with Jade to 4 weeks, and by failing to award him a child support abatement during this summer visitation.

### STANDARD OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Rosloniec v. Rosloniec*, 18 Neb. App. 1, 773 N.W.2d 174 (2009).

### ANALYSIS

*Physical Custody.*

Luke argues that the district court erred in finding that it was in the best interests of Jade to award Chaz physical custody of Jade. The standard for determining custody is parental fitness and the child's best interests. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006). Nebraska's Parenting Act states that it is in the best interests of the child to have a "safe, stable, and nurturing environment." Neb. Rev. Stat. § 43-2921 (Reissue 2008). To determine the best interests of a child, a court must consider, at a minimum: (1) the relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing; (2) the desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning; (3) the general health, welfare, and social behavior of the minor child; and (4) credible evidence of abuse inflicted on any family or household member. Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an

existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy educational needs of the child. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004). When the evidence conflicts, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999).

This case is not the typical custody case which comes before the court on appeal, because most, if not all, of the facts of this case are undisputed. Luke and Chaz are Jade's biological parents, although their relationship with each other was sporadic. Chaz was Jade's primary caregiver for her entire 11 years of life prior to trial, has continually taken care of Jade's needs, and has facilitated a visitation schedule between Luke and Jade throughout all of the years as it was safe and appropriate for Jade. Jade has a loving relationship with each parent, and also has a relationship with each of the parties' respective significant others. Each party testified that, but for a few minor issues, both were capable of having custody of Jade and are clearly fit parents.

The record indicates that Jade has been diagnosed with ADHD and is currently taking medication while in school to assist with behavior and focus. Jade was not a bad student before the diagnosis, but since the diagnosis has improved even more and was described more than once by various witnesses as intelligent, well-rounded, happy, and active. Both parents have taken an active role in Jade's school and extracurricular activities, and both care very much for her well-being. The main issue presented at trial was that of Jade's poor dental health in 2007 and 2010. Chaz admitted that she had not taken Jade for dental checkups because she believed there were no problems and that that decision was not a good one, although there were also issues with Chaz' ability to pay for that dental work. Luke took great issue with Jade's dental issues, but failed to make any appointments himself, and testified that he did not feel like he had to pay for the dental work because when Jade was in his care, she brushed her teeth. Further, Jade's dentist testified that it was not uncommon for children to undergo treatment for issues with cavities such as Jade had exhibited.

Testimony given by Jade's psychologist indicates that structure is an important part of addressing and treating the behavior of children diagnosed with ADHD. Jade has attended the Tri County school since she began attending school in kindergarten and is enrolled in several programs which continue to assist her with her struggles in school. Jade has the opportunity to seek counseling with the school counselor if additional counseling becomes necessary, and the record indicates that both parents follow through with her medication as directed by the prescribing physician.

Thus, upon our de novo review of the record, we cannot say that the district court abused its discretion by awarding Chaz physical custody of Jade. Although both parties are fit parents and have the structure to provide Jade with a safe home, Chaz has been Jade's primary caregiver for her entire life and there is nothing in the record to suggest that the continuance of that is not in Jade's best interests.

*Extended Summer Visitation.*

Luke argues that the district court abused its discretion by limiting his summer visitation. The district court awarded Luke 4 weeks of summer visitation. Luke argues that he is capable of

taking good care of Jade and that he is sincere in wanting to have her for an extended period of time.

We do not disagree that the record indicates neither party disputes that Luke is capable of taking care of Jade, that they are bonded, and that they care for each other. However, the record also indicates that Jade's ADHD diagnosis requires structure and stability and that it was not until 2011 when Luke had begun to have Jade for any extended visitation. The record indicates that Luke did not request any extended visitation until the summer of 2011, when he had 4 weeks of visitation, broken into 2-week blocks. In 2012, Luke had 4 weeks of visitation with Jade scheduled. Testimony indicates that after 2 weeks of that visitation, Chaz requested that the visitation end early. Chaz admitted that she discontinued the visitation in 2012, because they had no formal agreement for parenting time and Luke had refused to sign the mediated parenting plan. Chaz admitted that was not the appropriate action to take. The district court found that Chaz was manipulative in her actions, but that Luke did not ask for any further visitation and gave little weight to the incident.

Thus, based upon our de novo review of the record, we cannot say that the district court abused its discretion by awarding Luke 4 weeks of extended summer visitation time in the parenting plan.

*Child Support Abatement.*

Luke argues that the district court erred by failing to give him a child support abatement for the 4 weeks of summer visitation, because during that time, Chaz will be "relieved of all of those costs that she might otherwise incur and for which child support is paid." Brief for appellant at 34.

The Nebraska Child Support Guidelines provide in relevant part:

> Visitation or parenting time adjustments or direct cost sharing should be specified in the support order. If child support is not calculated under § 4-212, an adjustment in child support may be made at the discretion of the court when visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period. During visitation or parenting time periods of 28 days or more in any 90-day period, support payments may be reduced by up to 80 percent. The amount of any reduction for extended parenting time shall be specified in the court's order and shall be presumed to apply to the months designated in the order.

Neb. Ct. R. § 4-210. This particular provision of the child support guidelines allows the reduction in child support, but does not mandate it. There is no indication in this record that Luke ever requested an abatement in his child support obligation. However, even if he had requested a child support abatement, it is within the district court's discretion. Based upon the record in this case, we find no abuse of discretion by the district court in failing to give Luke a child support abatement for his 4 weeks of extended summer visitation.

CONCLUSION

In sum, upon our de novo review of the record, we find that the district court did not abuse its discretion in its determinations regarding child custody, summer visitation, and by not

awarding Luke a child support abatement for his 4 weeks of summer visitation. Therefore, we affirm.

AFFIRMED.