IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

Fish v. Fish

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

Teresa Ann Fish, appellant,
v.
Bradley Steven Fish, appellee.

Filed April 16, 2013.    No. A-12-588.

Appeal from the District Court for Hall County: William T. Wright, Judge. Affirmed.

James H. Truell, of Truell, Murray & Associates, for appellant.

John B. McDermott, of Shamberg, Wolf, McDermott & Depue, for appellee.

Sievers, Pirtle, and Riedmann, Judges.

Pirtle, Judge.

## I. INTRODUCTION

Teresa Ann Fish, now known as Teresa Ann Hill, appeals from the order of the district court for Hall County filed June 5, 2012, which denied Teresa's application to remove the parties' two minor children from the State of Nebraska. For the reasons that follow, we affirm.

## II. BACKGROUND

Teresa and Bradley Steven Fish divorced, and the decree of dissolution of marriage was entered by the district court for Hall County on February 1, 2011. Subject to the terms of the parenting plan, Teresa was given physical custody of the parties' two minor children, Abbie Fish and Megan Fish, who at the time of trial were age 13 and age 10 respectively. Teresa and Bradley held legal custody jointly.

The parties separated in October 2009, and Teresa began a relationship with James Hill during the pendency of the dissolution action. Hill, a career officer in the U.S. Navy who held the rank of lieutenant commander, was divorced and had custody of his two sons. Hill was a

- 1 -

former high school classmate of Teresa's in Superior, Nebraska, and they reconnected in September 2010.

After the decree of dissolution of Teresa and Bradley's marriage was entered in February 2011, Teresa quit her teaching job in Grand Island, Nebraska, and hoped to move to Omaha, Nebraska, to find employment and be nearer to Hill.

Hill proposed marriage to Teresa in the first week of April 2011, and he was notified 1 week later that he would be transferred to San Diego, California. Teresa moved with the children to Superior in June 2011. She decided to go to Superior to be near her father, family, and friends. Abbie and Megan were enrolled in school in Superior for the 2011-12 school year.

Bradley's parenting time was scheduled to take place every Monday and Wednesday from 4:30 to 7:30 p.m. and every other weekend from 4:30 p.m. Friday to 7:30 p.m. Sunday. Teresa and the children's move to Superior required Bradley to drive approximately 1½ hours each way from Grand Island to exercise his parenting time and approximately 1,800 to 2,000 miles per month. Teresa said Bradley exercised his visitation well and was flexible to accommodate the children's schedules for activities.

On June 15, 2011, Teresa filed her "Application for Consent to Relocate" to California.

Teresa and Hill entered into a lease agreement to rent a home in Chula Vista, California, on July 12, 2011, and were married August 5. Teresa sent the children's beds and belongings from Grand Island to the rental home in California during the summer of 2011 and decorated their bedrooms accordingly.

On May 3, 2012, the trial was held before the district court for Hall County on Teresa's request for removal.

Teresa testified regarding the home she leased with Hill and introduced evidence regarding the quality of the schools in the area. Teresa is "endorsed in Elementary, Special Ed[ucation and] can teach kindergarten through 8th grade," and she testified that she planned to search for a teaching job in Chula Vista if she was allowed to move. Teresa testified that she communicates with Bradley by either "email or text," because there is "tension between [them]" and she does not like "being yelled at over the phone."

Abbie and Megan met in March 2010 with Shari Schnuelle, a licensed independent professional counselor, to discuss the transitions associated with the divorce and adjusted parenting time schedules. Teresa and Bradley met with her jointly to work out the parenting time schedule. Teresa contacted Schnuelle again in April 2011 to schedule times for Abbie and Megan to discuss Teresa's upcoming marriage to Hill and the potential move to California. Schnuelle testified that Megan was feeling conflicted about the move to California because she wanted to see and spend time with Bradley, but she wanted to be with Teresa in California. Schnuelle said the children have shown the ability to adapt to the relocation to Superior, but that both children expressed a desire to be in California with Teresa. Schnuelle also indicated that the children sometimes sleep in the same bed as Bradley. She said there was no indication that there was any inappropriate contact or anything untoward, but she believed it to be inappropriate.

Bradley testified that he is a shipping auditor and works 6 a.m. to 4:30 p.m. and that on days when he has visitation with Abbie and Megan, he leaves work early, at 2:30 p.m. He stated that it is very important to him to have regular contact with his children, but that he adjusts his parenting time to accommodate the children's activities and time with friends. Bradley testified

that Abbie and Megan have good relationships with extended family in Nebraska, including Bradley's brother, his wife, and their three children; Bradley's aunts and uncles in Grand Island; and the children's grandmother in Lincoln, Nebraska. Bradley said he wants the children to stay in Nebraska so he can be a part of their lives. He wants to exercise visitation; be there for them; and go to their parent-teacher conferences, music recitals, and athletic games. He enjoys being their father and wants to be a part of their lives.

An elementary school teacher in Grand Island testified that she had taught both Abbie and Megan and had worked with Teresa when she taught. The teacher said Bradley and Teresa were contacted through a reading program at the school to address the difficulties Megan had with some of her schoolwork. The teacher said that Bradley attended the scheduled conferences and that when he could not come, he called to discuss Megan's progress. The teacher described Bradley as an involved parent who showed an interest in both Abbie's and Megan's schoolwork.

Megan expressed her preference not to be interviewed, while Abbie was interviewed regarding her opinions and preferences regarding the potential move to California. Abbie stated that when they lived in Grand Island, Abbie participated in gymnastics, dance, soccer, and softball. In Superior, she was involved in softball, skating, bowling, and volleyball. She did not express an interest in activities which are currently unavailable to her in Superior, except for dance, which was something she had done while in Grand Island.

Abbie said she talked to Hill about "school ratings, and like how he thinks it will be really easy to fit in, and the beaches and stuff like that." She said Hill said there are more clubs and sports in which to participate in California versus Grand Island or Superior. She said that she has been to California twice and that she likes it because "there's beaches really close, and there's huge malls. And it's warm." She said she wants to live with Hill and his sons, who are "fun to hang out with," and because Hill is easier to talk to than Bradley. She said Bradley is a little more protective and less open with her about topics such as violence or drugs.

Abbie said that when she found out there was a possibility of moving, she was "kind of sad because [she] didn't want to leave [her] friends and [she] didn't know how it was going to be [in California] because [she] never moved out of state." She said that after the move from Grand Island to Superior, she realized it "wasn't that bad to move," and that she became more excited about the possibility. She said that she has not seen the school she would attend in California, but that she has heard it is like a college campus. She said she was "kind of scared since it's so big," but she said "if [she] get[s] used to it, then it will be fine."

Abbie testified that Bradley has been flexible with visitation time and allowed her to occasionally spend time with friends in Superior instead of going to Grand Island. She also said he has occasionally changed plans or asked family members to change plans so Abbie can spend time with family as well as her friends. Abbie said she had not considered how the move would affect her relationship with Bradley. She said it would be "kind of hard just to see him [when she is] out of school and [on] breaks." Abbie also said it would bother her not to see her grandfather as much, because in Superior she "can just like walk down to his house" anytime. She said it would bother her not to see her grandmother in Lincoln and her uncle in Kearney as often. She said she would also miss a few of her friends who she currently sees daily.

Following the hearing, the court entered an order on June 5, 2012, denying Teresa's "Motion for Permission to Remove Minor Children." Teresa timely filed her notice of appeal on June 29, 2012.

## III. ASSIGNMENTS OF ERROR

Teresa's assignments of error, consolidated and restated, are that the district court erred in determining that although Teresa had a legitimate reason to leave the State of Nebraska, it was not in the children's best interests to do so.

## IV. STANDARD OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Wild v. Wild*, 15 Neb. App. 717, 737 N.W.2d 882 (2007). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

## V. ANALYSIS

There is a two-step process before a custodial parent is allowed to remove a child from the State of Nebraska. The custodial parent must satisfy the court that there is a legitimate reason for leaving the state and that it is in the minor child's best interests to continue to live with that parent. *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999).

### 1. LEGITIMATE REASON FOR REMOVAL

Teresa sought permission to remove the children from Nebraska and to move to California, where she planned to reside with her new husband, Hill. Previously, Teresa and Hill resided in Nebraska, but he was transferred to San Diego to fulfill his duties as an officer in the U.S. Navy. The court found, and the parties agree, that Teresa showed a legitimate reason to leave the state. Having found Teresa has satisfied the first step of the removal process, we will consider the best interests of the minor children.

### 2. BEST INTERESTS OF MINOR CHILDREN

After clearing the threshold of showing a legitimate reason for leaving the state, the custodial parent must next demonstrate that the move is in the child's best interests. *Farnsworth, supra*. Whether the proposed move is in the best interests of the child is the paramount consideration. *Id.* See, also, *Evenson v. Evenson*, 248 Neb. 719, 538 N.W.2d 746 (1995).

In determining whether removal to another jurisdiction is in the child's best interests, the court considers (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent; and (3) the impact such move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation. *Wild, supra.*

(a) Each Parent's Motives

The first factor that must be considered is each parent's motives for seeking or opposing the removal of the minor child from the jurisdiction. The ultimate question in evaluating the parties' motives in seeking removal of a child to another jurisdiction is whether either party has elected or resisted a removal in an effort to frustrate or manipulate the other party. *Id.*

The trial court determined Teresa was motivated to join Hill in the San Diego area and to pursue career opportunities in teaching following her arrival. The court also found Bradley opposed the move, primarily because of the substantial change it will create in his ongoing opportunity to have contact with his children and be a regular and integral part of their lives, on a weekly, if not daily, basis. Ultimately, the court determined the motives of the parents did not weigh in favor of removal or in favor of denial of removal of the children, and we agree.

(b) Quality of Life

The second factor that must be considered is the potential that the move holds for enhancing the quality of life for the child and the custodial parent. This factor requires an analysis of other considerations which bear upon the potential enhancement of the child's quality of life. *Wild v. Wild*, 15 Neb. App. 717, 737 N.W.2d 882 (2007).

In determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the child and the custodial parent, a court evaluates the following considerations: the emotional, physical, and developmental needs of the child; the child's opinion or preference as to where to live; the extent to which the relocating parent's income or employment will be enhanced; the degree to which housing or living conditions would be improved; the existence of educational advantages; the quality of the relationship between the child and each parent; the strength of the child's ties to the present community and extended family there; and the likelihood that allowing or denying the removal would antagonize hostilities between the two parties. *Id.* This list should not be misconstrued as setting out a hierarchy of considerations, and depending on the circumstances of a particular case, any one consideration or combination of considerations may be variously weighted. *Id.*

*(i) Emotional, Physical, and Developmental*
*Needs of Children*

The court found the evidence showed that both parents in this case are loving and concerned parents and that each is more than capable of meeting the children's emotional, physical, and developmental needs. Ultimately, the court found this factor weighed neither in favor of removal or in favor of denial of removal, and we agree.

The court noted the testimony of Schnuelle expressing disapproval of Bradley's practice of allowing Megan to climb into his bed when she is fearful during a thunderstorm. However, the court stated this behavior suggests no significant danger, emotional or otherwise, to either child. Further, the court stated that it appeared Schnuelle had chosen sides in the dispute and that the court found none of her testimony was deemed particularly helpful.

Teresa asserts that Schnuelle had not chosen sides and that therefore, the court did not give sufficient weight to the testimony regarding the children's emotional and physical development. Teresa argues Schnuelle had not indicated relocation is better or worse for the

children; she solely concluded communication between the parties is such that it is in the best interests of the children to remain with Teresa.

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012).

The issue here is removal, not placement of custody between the mother and the father. Teresa indicated she would be willing to stay in Nebraska if the court denied removal, and accordingly, the court gave appropriate weight to Schnuelle's testimony. The trial court's decision with regard to Schnuelle's testimony is not an abuse of discretion.

### (ii) Child's Opinion and Preferences

The court concluded this factor weighed neither in favor of removal or in favor of denial of removal, taking into consideration only the opinion and preferences of Abbie, as Megan expressed her preference not to be interviewed by the court. The court found Abbie's desires and preferences were driven by the "sun, surf, sand and glamour of California," rather than any sound reasoning. The court noted Abbie's repeated statements that she had not really thought out in any detail the repercussions associated with her removal from the only state she had ever known or lived in, and where Bradley and virtually every member of her extended family on both sides will continue to live.

Though Abbie stated her desire to move to California with Teresa, Hill, and Hill's sons, she repeatedly stated that she had not considered various factors, including the impact of the move on her relationships with Bradley, extended family, and friends in Nebraska. Upon a review of the record, we find Abbie's preference did not weigh for or against removal.

### (iii) Enhancement of Custodial Parent's Income, Employment, and Economic Circumstances

The court concluded that Teresa's desire to live in California is not motivated primarily by economic enhancement, but it would likely provide the opportunity for expanded income if she is able to secure employment as a teacher in Chula Vista.

Teresa provided evidence that at one point she had a potential job in Omaha, but that in Superior she has fewer opportunities. In comparison, a teaching job for Teresa in California, in addition to Hill's income and military benefits, was determined to be an enhancement of income, employment, and economic circumstances weighing in favor of removal.

Bradley disagreed with the court's analysis, as Teresa quit a job paying $64,000 per year in Grand Island in order to be closer to Hill when he lived in Omaha. Further, he asserts Teresa did not attempt to obtain employment in Omaha or withdraw her resignation from her teaching job in Grand Island after she found out Hill would be transferred.

We find the court correctly determined that compared to her current circumstances in Superior, the move to California would enhance Teresa's income, employment, and economic circumstances.

*(iv) Housing and Living Conditions*

Teresa acquired the marital home as part of the parties' dissolution. She sold the home, and as a result, the living conditions for Teresa and the children in Superior are only temporary. Teresa and Hill leased a "well appointed" home in Chula Vista, and the court determined it appears comfortable, secure, and in a relatively upscale neighborhood with good schools.

The court determined that the Chula Vista home is clearly an improvement over the temporary home in Superior and that it is unclear what housing or living conditions Teresa could or would provide in Nebraska. The court determined this factor weighs slightly in favor of removal, and we agree.

*(v) Education Advantages*

Teresa introduced a substantial amount of information on various school districts available in Chula Vista. The court stated the schools appear to be excellent in terms of resources and opportunities available to the children, but it is clear the children will also be in much larger classes on much larger campuses. The court said it would be unfair to speculate on the resources of any Nebraska schools to which Teresa would be expected to move and found this factor weighs slightly for removal.

Teresa asserts the court erred in not giving the proper weight to the increased educational advantages of schools in California. Bradley asserts the court erred in considering the statistics provided for schools in Grand Island, as the children have not attended school there in the past year. They attended schools in Superior for the 2011-12 year. Bradley also asserts the State of California ranks lower in the nation in SAT test scores than Nebraska.

Upon a review of the evidence, we find the trial court did not err in either respect. Teresa did not provide data regarding the schools the children currently attend. However, the court recognized that, should Teresa stay in Nebraska, she may not stay in Superior or Grand Island, and the court did not rely heavily on the Grand Island data. Further, the SAT scores are reflective of the states as a whole and are not necessarily indicative of the Chula Vista school districts. The Chula Vista schools will have ample resources and opportunities, as well as an expanded offering of courses and extracurricular activities; this factor weighs slightly in favor of removal.

*(vi) Quality of Relationship Between*
*Child and Parents*

The court determined the children are well parented and have a strong relationship with both parents, who are committed and loving. The court recognized that Abbie is currently estranged to some degree from Bradley and that she has difficulty communicating with him. The court determined this is not a result of any deficiency of Bradley's parenting, but, rather, this is a product of her age and her desire to move to California. A review of the record supports this finding, as Abbie stated that Bradley is more protective and tended to get emotional or angry when discussing the potential move to California with her. The court stated this factor weighs neither in favor of removal or in favor of denial of removal, and we agree.

*(vii) Ties to Community and Extended Family*

The court determined Abbie and Megan have significant extended family in the Superior and Grand Island areas, as well as other areas of Nebraska. Abbie stated she has a close relationship with at least two members of her extended family and expressed that it would bother her not to see them as often. The children have no extended family in California. The court also considered the bonds Abbie and Megan have developed with Hill and his sons. The court determined this factor weighed against allowing removal.

Teresa asserts the court did not give proper weight to the relationships formed between Abbie, Megan, Hill, and his sons. She acknowledges that their relationship has been short term, but that they have blended as a family.

A review of the evidence shows that while this may be true, Abbie and Megan have significant and longstanding bonds with their extended family in Nebraska and ties to the community in both Superior and Grand Island. Although they have lived in Superior for only a year, they had prior ties to that community through their extended family, specifically their grandfather. This factor weighs against removal.

*(viii) Hostility Between Parties*

The court stated that it is clear the parties are already antagonistic to each other and that there are communication problems. Bradley feels misled by Teresa's actions in first agreeing to the parenting plan and soon after attempting to remove the children from Nebraska. The court acknowledged that Teresa said she is willing to allow the children to return to Nebraska for much, if not all, of the breaks from school. However, the court also noted that as the children grow older, their involvement in activities and relationships with friends will affect their ability to visit and will also require continuous communication between the parties. Ultimately, the court found that it is likely removal will increase hostility between the parents, and this weighed against removal.

(c) Impact on Noncustodial Parent's
Relationship With Children

The trial court concluded that removal would significantly impact the relationship between the children and Bradley. There would be a considerable reduction of "available face time and, more importantly, a reduction in the opportunities that Bradley would have to see and participate in the day to day activities and experiences of his children." The court took into consideration the fact that Bradley consistently exercised his visitation to the full extent permitted by the parenting plan, despite the time and expense required to travel between Superior and Grand Island.

Teresa asserts the trial court erred in calculating that Bradley averages 172 days per year of parenting time, as "nearly all of them are for only 2 or 3 hours at a time." Brief for appellant at 12. The record shows Bradley has time with the children every Monday and Wednesday and every other weekend from Friday evening until Sunday evening. The court does not state that these are 172 full days of parenting time, but, rather, that there are approximately that many days during the year when the children have contact for a few hours or more with Bradley. The court cites this number to illustrate that the number of days the children would be in contact with

Bradley would be significantly reduced if they relocate to California. The court's reference to the number of days Bradley is in contact with the children is not an abuse of discretion.

The court also considered the travel expenses Bradley would potentially incur if he were to make several trips back and forth to California each year to exercise his parenting time. The court determined Teresa's proposed move would deprive Bradley of the parenting opportunities he has now, and this factor weighed heavily against removal.

After a review of the record, we agree that the proposed move would significantly impact Bradley's relationship with his children and that the decision of the trial court was not an abuse of discretion.

(d) Conclusion on Best Interests

The court determined the motives of the parties were neutral. In considering quality of life factors, the court found that the enhancement of income for Teresa weighed in favor of removal and that the educational opportunities and housing and living conditions both weighed slightly in favor of removal. Alternately, the court determined the children's ties to the community and extended family, as well as the potential for increased hostility between the parties due to the necessity for ongoing communication, weighed against removal. Finally, the court stated it is difficult to reconcile the impact the move will have on the relationship of the children with Bradley and extended family and found the balance tips in favor of denying removal. Our review of the evidence did not indicate an abuse of discretion.

VI. CONCLUSION

The district court for Hall County found Teresa successfully showed a legitimate reason to remove the children from the state, but determined it was not in the children's best interests to do so. Following a de novo review of the record, we find the court did not abuse its discretion when it denied Teresa's request to remove the parties' children from the State of Nebraska.

AFFIRMED.